**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| BRODERICK ASSOCIATES, INC., d/b/a BRODERICK AND ASSOCIATES | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 1:14-cv-01133-TWP-DML |
| FANSTEEL, INC. a/k/a FANSTEEL INTERCAST, and AMERICAN SINTERED TECHNOLOGIES a/k/a FANSTEEL AMERICAN SINTERED TECHNOLOGIES, | ) ) ) ) ) ) | |
| Defendants. | ) | |

**ORDER ON PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

This matter is before the Court on a Motion for Partial Summary Judgment filed pursuant to Federal Rule of Civil Procedure 56 by Plaintiff Broderick Associates, Inc. ("Broderick") (Filing No. 61).  After its contractual business relationship with Defendants Fansteel, Inc. ("Fansteel") and American Sintered Technologies ("AST") (collectively, "the Defendants") deteriorated and terminated, Broderick initiated this lawsuit, asserting claims for breach of contract, unjust enrichment, and state statutory violations.  Broderick moves for partial summary judgment on its breach of contract and Illinois Sales Representative Act claims.  For the following reasons, the Court **GRANTS in part and DENIES in part** Broderick's Motion for Partial Summary Judgment.

## I.  BACKGROUND

Broderick is an Indiana corporation that provides business consulting and sales support services to other companies.  Fansteel is a company that manufactures metal castings in various shapes and sizes for the gas turbine market, flow control market, and industrial original equipment

manufacturer market.  AST is a Fansteel company that manufactures powder metal component parts for the automotive, hardware, and lawn and garden markets.  AST operates out of Pennsylvania.

On April 1, 2006, Broderick and the Defendants entered into a "Manufacturer's Sales Representative Agreement," whereby Broderick agreed to provide certain sales services to the Defendants in exchange for commission payments from the Defendants ("the Agreement").  The Agreement called for Broderick to develop the market for the Defendants' products within a specified territory in the United States—Indiana, Kentucky, Ohio, Michigan, and Tennessee. Broderick was to establish new customer accounts and service existing accounts.  The Agreement established a term for the contractual relationship, ending on December 31, 2007.  It also permitted the parties to extend the length of the term by executing a written extension agreement "within 30 days prior to the end of the current Term up to 30 days past the current expiration date." (Filing No. 63-2 at 5.)  Through a series of contract extensions, the parties agreed to extend the term of the Agreement to December 31, 2013 (Filing No. 1-3 at 9).

After the parties entered the Agreement in 2006, Broderick began providing sales representative services to the Defendants as called for in the Agreement.  In return, the Defendants paid commissions to Broderick in accordance with the payment terms of the Agreement.  The Agreement called for the commission payments to be "mailed by the 11th of each month for invoiced payments received by the end of the prior month."  (Filing No. 63-2 at 7.)  At some point during the parties' contractual relationship, the Defendants began experiencing financial hardship, and they fell behind on their commission payment obligations to Broderick at least in 2012 and 2013.  During one period of time, the Defendants were six to eight months behind on their payments (Filing No. 63-5 at 3).  At various times throughout 2013, the Defendants were three

weeks behind on their payment obligations.  At the end of 2013 they were behind on their payments of commissions owed to Broderick.  (Filing No. 63-1 at 10–12.)

Effective December 31, 2013, the Agreement was terminated by virtue of the expiration of the last contract extension and the parties had not executed another written contract extension. Under the provisions of the Agreement, if the Agreement was terminated without cause, Broderick would be "entitled to earned commissions for 180 days starting from date of termination," and for automotive accounts, "commissions will be paid to [Broderick] for 540 days from the date of termination." (Filing No. 63-2 at 5.)  However, if Broderick committed "any act of embezzlement, theft, fraud, or dishonesty against the [Defendants] or commit[ted] any material breach of this Agreement," the Defendants could terminate the Agreement "with cause."  *Id.*  "Upon said termination, [Broderick] will forfeit all unpaid commissions without recourse."  *Id.*

During the early months of 2014, Broderick pointed out to the Defendants that it was owed payment for outstanding commissions.  During this same time, Broderick and the Defendants had discussions regarding whether the Agreement would be extended.  More than once, the Defendants informed Broderick that they were looking at their business plans and hoped to have an answer for Broderick soon.

In a letter dated April 2, 2014, the Defendants acknowledged that the "current status" of the Agreement was "Contract not renewed as of December 2013."  (Filing No. 63-6 at 7.)  On April 30, 2014, John Graham ("Mr. Graham"), the Defendants' new chief operating officer, sent an email to Broderick asserting that the Defendants "terminated its contract with Broderick Associates on December 31st, 2013." (Filing No. 63-12 at 2.)  In this email, Mr. Graham claimed that the Agreement was terminated "with cause."  He then went on to assert that "[i]t's Fansteel's position that Broderick failed to honor multiple sections of the contract including Section 1

3

Engagement, Section 4 Relationship, and Section 5 Performance." *Id.* There was no explanation as to how these sections of the Agreement were not honored by Broderick. The Defendants did not submit payment to Broderick for the outstanding commissions.

On July 7, 2014, Broderick initiated this lawsuit by filing its Complaint against the Defendants, asserting claims for breach of contract, breach of implied contract, unjust enrichment, violation of the Illinois Sales Representative Act, and violation of the Indiana Wholesale Sales Representative Act based on the unpaid, due and owing commissions. After the Defendants filed their Answer and the parties conducted discovery, Broderick filed its Motion for Partial Summary Judgment on its breach of contract and Illinois Sales Representative Act claims.

## II.   SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 489–90 (7th Cir. 2007). In ruling on a motion for summary judgment, the court reviews "the record in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) (citation omitted). "However, inferences that are supported by only speculation or conjecture will not defeat a summary judgment motion." *Dorsey v. Morgan Stanley*, 507 F.3d 624, 627 (7th Cir. 2007) (citation and quotation marks omitted). Additionally, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth*, 476 F.3d at 490 (citation omitted). "The opposing party cannot meet this burden with conclusory

4

statements or speculation but only with appropriate citations to relevant admissible evidence." *Sink v. Knox County Hosp.*, 900 F. Supp. 1065, 1072 (S.D. Ind. 1995) (citations omitted).

"In much the same way that a court is not required to scour the record in search of evidence to defeat a motion for summary judgment, nor is it permitted to conduct a paper trial on the merits of [the] claim." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001) (citations and quotation marks omitted). "[N]either the mere existence of some alleged factual dispute between the parties nor the existence of some metaphysical doubt as to the material facts is sufficient to defeat a motion for summary judgment." *Chiaramonte v. Fashion Bed Grp., Inc.*, 129 F.3d 391, 395 (7th Cir. 1997) (citations and quotation marks omitted).

## III.   DISCUSSION

Broderick moves for partial summary judgment on its breach of contract and Illinois Sales Representative Act claims, asserting that the Defendants' failure to pay the unpaid, due and owing commissions was a breach of the parties' Agreement, and their failure to pay the commissions within thirteen days of when the commissions were due after termination of the Agreement is a violation of the Illinois Sales Representative Act, 820 Ill. Comp. Stat. 120.

In cases based on diversity jurisdiction, the court applies federal procedural law and state substantive law. *Hanover Ins. Co. v. Northern Bldg. Co.*, 751 F.3d 788, 792 (7th Cir. 2014). Rules of contract interpretation are substantive, so the Agreement will be interpreted according to state law. *Id.* In this case, the parties agreed that the laws of the State of Illinois would govern the Agreement and any disputes regarding the Agreement without application of its choice of law rules (Filing No. 63-2 at 8). "Contract cases such as this one are often prime candidates for summary judgment because contract interpretation is a question of law." *Hanover*, 751 F.3d at 791.

"In Illinois, the main objective in contract interpretation is to give effect to the intent of the parties." *Id.* at 792 (citing *C.A.M. Affiliates, Inc. v. First Am. Title Ins. Co.*, 715 N.E.2d 778, 782 (Ill. App. Ct. 1999)). "If a contract is clear and unambiguous, the court must determine the intent of the parties solely from the plain language of the contract." *Id.* (quoting *C.A.M. Affiliates*, 715 N.E.2d at 782). "[T]he mere fact that the parties disagree as to the meaning of a term does not make that term ambiguous." *William Blair & Co., LLC v. FI Liquidation Corp.*, 830 N.E.2d 760, 770 (Ill. App. Ct. 2005). "A contract term is ambiguous if it can reasonably be interpreted in more than one way due to the indefiniteness of the language or due to it having a double or multiple meaning." *Id.* at 769. "A contract is not ambiguous, however, if a court can ascertain its meaning from the general contract language." *Id.* at 770. "In the absence of ambiguity, a court must construe a contract according to its own language, not according to the parties' subjective constructions." *Id.*

"When a contract is clear and unambiguous, a court will not add terms in order to reach a result more equitable to one of the parties." *Mid-West Energy Consultants, Inc. v. Covenant Home, Inc.*, 815 N.E.2d 911, 916 (Ill. App. Ct. 2004) (citation omitted). "There is a strong presumption against provisions that easily could have been included in the contract but were not. A court will not add another term about which an agreement is silent." *Klemp v. Hergott Group*, 641 N.E.2d 957, 962 (Ill. App. Ct. 1994) (citations omitted). "Contractual provisions providing for termination of an agreement are generally enforceable according to their terms." *S & F Corp. v. American Express Co.*, 377 N.E.2d 73, 77 (Ill. App. Ct. 1978).

## A.    **Breach of Contract Claim**

Broderick asserts that there is no dispute that the Defendants entered into the Agreement with Broderick, the Defendants failed to make timely commission payments under the Agreement,

and Broderick suffered damage as a result of the Defendants' failure to make timely commission payments. Because of these undisputed facts, Broderick explains that it is entitled to summary judgment on its breach of contract claim.

In response to Broderick's breach of contract argument, the Defendants explain that they did not breach the Agreement because they did not have to pay the outstanding commissions to Broderick after they terminated the Agreement "with cause" after reviewing whether they would extend the Agreement with Broderick into 2014. Because they determined that the Agreement was terminated "with cause," the Defendants explain, Broderick forfeited all unpaid commissions due under the Agreement.

Under Illinois law, to establish a breach of contract claim, a plaintiff must show: "(1) an offer and acceptance, (2) consideration, (3) definite and certain contractual terms, (4) the plaintiff's performance of his contractual obligations, (5) the defendant's breach of the contract, and (6) damages resulting from the breach." *Green v. Trinity Int'l Univ.*, 801 N.E.2d 1208, 1213 (Ill. App. Ct. 2003).

Upon review of the designated evidence and the parties' briefs, it appears that there is no dispute that the parties entered into the Agreement and extended the initial Agreement term to December 31, 2013. Therefore, the Court focuses its review on the contractual provisions and the claimed breach.

Pursuant to the Agreement, Broderick established new customer accounts and serviced existing accounts for the Defendants. In return for these sales services, the Defendants paid commissions to Broderick. The Agreement called for the commission payments to be "mailed by the 11th of each month for invoiced payments received by the end of the prior month." (Filing No. 63-2 at 7.) The initial term of the Agreement expired on December 31, 2007. However, the

Agreement allowed the parties to extend the length of the term by executing a written extension agreement "within 30 days prior to the end of the current Term up to 30 days past the current expiration date." (Filing No. 63-2 at 5.)  "Failure to offer to extend the agreement by Fansteel will be treated as a termination and the provisions of section 9 of this agreement will apply."  *Id.*

Section 9 governs termination of the Agreement and states, in part:

a.      This Agreement (other than provisions, which by their terms, survive this Agreement), may be terminated by either party with or without cause at any time by giving a written 30-day notice to the other party. In addition, Fansteel may terminate this Agreement forthwith and without prior notice if [Broderick] or any of its salesmen, employees or agents commits any act of embezzlement, theft, fraud, or dishonesty against the [Defendants] or commits any material breach of this Agreement hereinafter referred to as cause. Upon said termination, [Broderick] will forfeit all unpaid commissions without recourse.

(Filing No. 63-2 at 5.)  Section 9 also provides that if the Agreement was terminated without cause, then Broderick would be "entitled to earned commissions for 180 days starting from date of termination," and for automotive accounts, "commissions will be paid to [Broderick] for 540 days from the date of termination."  *Id.*

Finally, Section 9 states:

c.      It shall be the responsibility of the appropriate Fansteel Sales Manager to monitor [Broderick's] adherence to this Agreement. Should the sales manager deem [Broderick] is non-performing; a formal review would be scheduled. [Broderick] is responsible to provide Fansteel with a corrective action plan and will be given no more than 90 days to execute said plan prior to any termination notice.

*Id.*

Under the terms of the Agreement, the Defendants were obligated to mail commission payments to Broderick by the eleventh of each month for payments the Defendants received during the previous month.  According to Carrie Saline ("Ms. Saline"), Defendant AST's general manager, there were times the Defendants were "very behind on commission payments."  (Filing No. 63-5 at 3.)  She estimated that the Defendants failed to timely pay commissions over a period

of six to eight months.  *Id*.  According to Ms. Saline, the Defendants' failure to timely pay commissions was a material breach of the Agreement (Filing No. 63-5 at 3–4).  Indeed, under Illinois law, "[o]nce performance of an obligation under a contract is due, failure to perform the obligation amounts to a breach."  *Fireman's Fund Mortg. Corp. v. Zollicoffer*, 719 F. Supp. 650, 656 (N.D. Ill. 1989) (citing *State Dept. of Agr. v. Ackerman*, 341 N.E.2d 48, 51 (Ill. App. Ct. 1975) ("[t]he breach of a duty to pay is an instantaneous occurrence that coincides with the moment at which the duty arises . . . .")).  Further, Mr. Graham, the Defendants' chief operating officer, testified that the Defendants got behind on their commission payment obligations to Broderick at least in 2012 and 2013.  At various times throughout 2013, the Defendants were three weeks behind on their payment obligations.  They were behind on their payments to Broderick at the end of 2013 when the Agreement was not renewed.  Commissions were due to Broderick when the Agreement terminated on December 31, 2013 (Filing No. 63-1 at 10–12).

Pursuant to the terms of the Agreement and according to the deposition testimony of Mr. Graham as the Defendants' 30(b)(6) representative, on December 31, 2013 the Agreement terminated based on non-renewal, not "for cause."  (Filing No. 63-1 at 14–16.)  The Defendants wanted to provide an "official," "final" notice of the termination, which they did on April 30, 2014 (Filing No. 63-1 at 15).  On April 30, 2014, the Defendants determined that the Agreement was terminated "with cause."  Prior to April 30, 2014, the Defendants had never taken the position that the December 31, 2013 termination was "with cause."  (Filing No. 63-1 at 16–17.)  Based on the Defendants' April 30, 2014 position that the termination was "with cause," the Defendants assert that they are not in breach of the Agreement because Broderick forfeits all unpaid commissions after a "with cause" termination.

In light of all these facts, Broderick sued the Defendants for breach of contract for the unpaid, due and owing commissions.  Broderick's argument is simple—the Defendants cannot unilaterally reinstate a terminated contract that ended without cause based on non-renewal just to terminate the contract again but with cause.  They cannot resurrect the terminated Agreement to re-terminate it "with cause" to avoid the obligation to pay commissions.

The Defendants' response to Broderick's argument also is simple.  They are not trying to resurrect the Agreement.  They assert that the Agreement does not require a determination of "with cause" or "without cause" at the time of the termination.  The Defendants point out that Section 8 of the Agreement does not state whether non-renewal automatically is treated as "with cause" or "without cause."  The Agreement does not limit the time within which a party must determine if the termination is "with cause."   From December 2013 through April 2014, the Defendants considered whether the termination should be "with cause," and on April 30, 2014, they determined that the termination four months earlier was "with cause."

The Defendants also briefly assert that terminating the Agreement with cause based on a material breach did not require any notice at all to Broderick.  However, this is not what the Agreement states.  It allows either party to terminate the Agreement with or without cause at any time by giving a written thirty-day notice to the other party.  But in the event of a material breach by Broderick, the Defendants could terminate the Agreement without prior notice, meaning the Defendants would not have to provide the written thirty-day notice to Broderick.  However, the Defendants still would need to inform Broderick that they were contemporaneously terminating the Agreement based on a material breach so that Broderick would know of the termination.

Broderick replies to the Defendants' argument by explaining that the Agreement does not provide an "infinite limbo period" whereby a termination "without cause" can be converted into a

10

termination "with cause". If it was the parties' intent to allow the Defendants to deem the Agreement terminated "with cause" four months after the "original" termination, the Agreement should have said so, and the Court should reject the Defendants' request to add this language into the Agreement. Broderick asserts that an after-the-fact "with cause" termination cannot retroactively excuse the Defendants' prior breaches of failing to timely pay commissions. Nothing in the Agreement provides a retroactive excuse for past breaches. Broderick explains that the Defendants' position ignores the plain meaning of the contract language and requires the addition of terms that simply are not there.

The Agreement does not require a determination of "with cause" or "without cause" at the time of the termination, does not limit the time within which a party must determine if the termination is "with cause," and does not state whether non-renewal automatically is treated as "with cause" or "without cause." Similarly, on the other hand, the Agreement does not provide a "limbo period" whereby a termination "without cause" can be converted into a "with cause" termination, and it does not allow a party to deem the Agreement terminated "with cause" months after the Agreement already has been terminated. "A court will not add another term about which an agreement is silent." *Klemp*, 641 N.E.2d at 962. In fact, no other terms are necessary.

The simple failure to extend a contract or just allowing a contract to expire according to its terms is not a termination "with cause" or "for cause." If there is "cause" for terminating a contract, that reason or "cause" should be expressed. If no "cause" is communicated, then logic and reason demand that the termination is "without cause." The Agreement does not need to explicitly explain how a termination "without cause" occurs. If no "cause" is given, then it is "without cause." In this case, the parties allowed the Agreement to expire on December 31, 2013 by not extending the

term.  By this non-renewal, the Agreement was terminated.  The Defendants gave no "cause" for the non-renewal termination.  Thus, the termination was "without cause."

As a result, Broderick is entitled to the commission payments due under the Agreement. Broderick did not forfeit these commissions.  Because the Defendants have not paid the commissions, they have breached the Agreement.  Summary judgment is granted to Broderick on its claim for breach of contract.  The Court leaves for trial the determination of the amount of damages sustained by Broderick as a result of the Defendants' breach.

Although it is not necessary to the Court's analysis and determination, the Court briefly addresses the Defendants' lengthy explanation for why they deemed the termination to be "with cause."   In their discovery responses, the Defendants asserted that at some unspecified point in 2013, Broderick failed to visit customers, maintain current business, service current accounts, solicit new business, and identify themselves as representatives of Fansteel (Filing No. 78-5 at 7). The Defendants also asserted that, consistently from 2006 (when the Agreement began) forward, Broderick failed to develop annual performance goals, develop and implement a sales and marketing plan, provide timely communications about customer relations, and provide sales forecasts and product/marketing information (Filing No. 78-5 at 7–8).  The Defendants' executives and managers—John Graham, Stephen Mullendore, Jim Vito, Carrie Saline, and Tom Weaver— had knowledge of these things (Filing No. 78-5 at 8).  It is for these reasons that the Defendants assert Broderick materially breached the Agreement leading to the Defendants' decision to allegedly terminate the Agreement "with cause" on April 30, 2014.

Four months after the Agreement had terminated based on non-renewal, Mr. Graham sent an email to Broderick on April 30, 2014.  In the email, Mr. Graham asserted that the Defendants "terminated its contract with Broderick Associates on December 31st, 2013," and the termination

was "with cause" because "Broderick failed to honor multiple sections of the contract including Section 1 Engagement, Section 4 Relationship, and Section 5 Performance." (Filing No. 63-12 at 2.)  However, Section 9c of the Agreement provided protection to Broderick in the event that the Defendants believed Broderick was not performing under the Agreement.  This provision provides that:

> c.      It shall be the responsibility of the appropriate Fansteel Sales Manager to monitor [Broderick's] adherence to this Agreement. Should the sales manager deem [Broderick] is non-performing; a formal review would be scheduled. [Broderick] is responsible to provide Fansteel with a corrective action plan and will be given no more than 90 days to execute said plan prior to any termination notice.

(Filing No. 63-2 at 5.)  In the event that Broderick was not performing according to the provisions of the Agreement, the Defendants were to schedule a formal review, and Broderick was to provide a corrective action plan and execute on that plan.  Broderick would be given no more than ninety days to execute the corrective plan before termination notice was given.

The designated evidence indicates that the Defendants never scheduled a formal review of Broderick and never requested a corrective action plan from Broderick (Filing No. 89-3 at 2–3; Filing No. 78-6 at 3–5; Filing No. 89-4 at 2; Filing No. 89-1 at 2).  Thus, the Defendants failed to comply with these contractual provisions regarding perceived non-performance by Broderick.  The Defendants assert that consistently from 2006, when the Agreement began, until termination in 2013, Broderick failed to develop annual performance goals, develop and implement a sales and marketing plan, provide timely communications about customer relations, and provide sales forecasts and product/marketing information.  Despite these alleged breaches by Broderick, the Defendants continued to extend their contract with Broderick for seven years without any requests for a formal review or a corrective action plan.  The Defendants additionally claim that at some unspecified point in 2013, Broderick failed to visit customers, maintain current business, service

current accounts, solicit new business, and identify themselves as representatives of Fansteel.  Yet the Defendants never scheduled a formal review and never requested a corrective action plan as called for by the Agreement.  The Defendants cannot point the finger at Broderick, asserting its non-performance, while not following the provisions of the Agreement governing any non-performance by Broderick.

**B.**      **Violation of the Illinois Sales Representative Act**

Broderick also moves for summary judgment on its Illinois Sales Representative Act ("the Act") claim, asserting that the Defendants' failure to pay the commissions within thirteen days of when the commissions were due after termination of the Agreement is a violation of the Act, 820 Ill. Comp. Stat. 120.  As a result, Broderick claims that it is entitled to exemplary damages and its attorney fees and costs.

The Act declares:

> Sec. 2.  All commissions due at the time of termination of a contract between a sales representative and principal shall be paid within 13 days of termination, and commissions that become due after termination shall be paid within 13 days of the date on which such commissions become due. Any provision in any contract between a sales representative and principal purporting to waive any of the provisions of this Act shall be void.

820 Ill. Comp. Stat. 120/2.  The Act sets out a recovery for sales representatives who have been denied commission payments in violation of the Act.

> Sec. 3.  A principal who fails to comply with the provisions of Section 2 concerning timely payment or with any contractual provision concerning timely payment of commissions due upon the termination of the contract with the sales representative, shall be liable in a civil action for exemplary damages in an amount which does not exceed 3 times the amount of the commissions owed to the sales representative. Additionally, such principal shall pay the sales representative's reasonable attorney's fees and court costs.

820 Ill. Comp. Stat. 120/3.

The Defendants first assert that Broderick is not entitled to recovery under the Act because the Agreement was terminated "with cause," and thereby, Broderick forfeited all commissions. Because Broderick forfeited all commissions, the Defendants have not violated the Act by not paying commissions. For the reasons explained above, the Court rejects this argument of the Defendants. The Defendants owed commissions to Broderick when the Agreement was terminated. Additional commissions became due and owing after the termination of the Agreement. The Defendants have failed to pay these commissions to Broderick. Therefore, the Defendants violated the Act.

The Defendants next assert that Broderick is not entitled to exemplary damages under the Act because they did not act in bad faith, and their failure to pay the commissions was not "willful and wanton conduct or [a] vexatious refusal to pay." *Zavell & Assocs. v. CCA Indus.*, 628 N.E.2d 1050, 1052 (Ill. App. Ct. 1993). Relying on *Installco Inc. v. Whiting Corp.*, 784 N.E.2d 312, 320 (Ill. App. Ct. 2002), the Defendants explain that, "[n]o automatic award of exemplary damages is granted for every violation of the Act." Further, "[s]uch damages should not be awarded absent a finding of culpability that exceeds bad faith. . . . [T]he plaintiff would be entitled to exemplary damages only if it could demonstrate that the defendant's behavior in withholding the commissions beyond the statutory period was outrageous and the moral equivalent of criminal conduct." *Id.*

The designated evidence shows that the Defendants knew commissions were due at the time the Agreement was terminated. However, the evidence does not support a finding at the summary judgment stage that the Defendants' failure to pay the commissions was in bad faith or "the moral equivalent of criminal conduct." Thus, the Court denies summary judgment for Broderick on its claim for exemplary damages under the Act.

The Act also states that a "principal shall pay the sales representative's reasonable attorney's fees and court costs." 820 Ill. Comp. Stat. 120/3. The Defendants' argument regarding attorney fees and costs goes to the amount of such an award. Because the Court is leaving for trial the determination of the amount of damages sustained by Broderick as a result of the Defendants' breach, it is also appropriate for the Court to leave for trial the determination of the amount of attorney fees and costs under the Act. The Court grants summary judgment to Broderick, holding that the Defendants have violated the Act and that they are liable to Broderick for its attorney fees and costs.

## IV.   CONCLUSION

For the foregoing reasons, Plaintiff Broderick Associates, Inc.'s Motion for Partial Summary Judgment (Filing No. 61) is **GRANTED in part and DENIED in part**. Defendants Fansteel, Inc. and American Sintered Technologies are liable to Broderick for their breach of contract for the unpaid commissions that are due to Broderick under the Agreement as well as the attorney fees and costs available under the Illinois Sales Representative Act. The other claims asserted in Broderick's Complaint and the issue of the amount of damages remain pending for trial.

**SO ORDERED.**

Date: 1/22/2016

_____
TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

Julia E. Dimick
ALERDING CASTOR HEWITT LLP
jdimick@alerdingcastor.com

Michael J. Alerding
ALERDING CASTOR HEWITT LLP
malerding@alerdingcastor.com

16

Gregory Forrest Hahn
BOSE MCKINNEY & EVANS, LLP
ghahn@boselaw.com

Kevin Michael Quinn
BOSE MCKINNEY & EVANS, LLP
kquinn@boselaw.com

Vilda Samuel Laurin, III
BOSE MCKINNEY & EVANS, LLP
slaurin@boselaw.com